IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| LILLIAN LAM and KEVIN TIBLE, | ) | No. 79018-8-I |
| Appellants, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| SERGIO BRAVO and XUAN ZHANG, | ) | |
| Respondents, | ) | |
| and | ) | |
| ERIKA CHIHUAHUA, | ) | UNPUBLISHED OPINION |
| Defendant. | ) | FILED: January 13, 2020 |

SMITH, J. — This appeal involves a dispute regarding a landlocked property and its easement. Appellants, Lillian Lam and Kevin Tible (collectively the Lams), co-own their home, which they can access only by ingress and egress over Sergio Bravo and Xuan Zhang's (collectively the Bravos) property (Bravo Property). The Lams brought suit against the Bravos and their tenant, Erika Chihuahua, for, among other things, obstruction of easement, nuisance, and preliminary and permanent injunction. The Lams alleged that the prior owner of the Bravo Property granted an easement to the exclusion of use for the benefit of the Bravo Property. The Lams additionally claimed adverse possession rights to parts of the Bravos Property. The Bravos filed a motion for partial summary judgment asserting that the easement was not exclusive and the Lams had not satisfied the elements of adverse possession. The King County Superior Court granted the motion. The court also granted the Bravos' motion for attorney fees

and sanctions.

The Lams appeal. They argue, among other things, that because they did not allege an adverse possession claim in their complaint, the trial court erred by granting summary judgment as to such a claim. But because the Lams asserted adverse possession as an affirmative defense to the Bravos' counterclaims and in a motion for a temporary restraining order (TRO), the trial court did not err by entering summary judgment regarding that claim. Additionally, because the easement is ambiguous and the grantor's conduct and the circumstances at the time of conveyance support a conclusion that the easement was not meant to exclude the Bravo Property's use, the Lams also failed to establish a genuine issue of material fact as to whether the easement excludes use by the Bravo Property. Finally, the trial court did not err by awarding fees and sanctions because the Lams brought claims that were not grounded in fact or supported by law. Therefore, we affirm.

## FACTS

In 2016, the Lams purchased their home at 5144 South Augusta Street in Seattle (Lam Property). Earlier that year, the Bravos had purchased the Bravo Property, a duplex at 5146 South Augusta Street. Prior to the Bravos, Viengkham Phonbandit owned the Bravo Property, and his brother and his sister-in-law, Nate and Na Phonbandit, lived in the lower unit of the duplex until 2014. Robert Arnaud and Lan Tran bought the Lam Property in 2006, which was and remained undeveloped until the Lams purchased it in 2016.

In 2007, Viengkham granted a written easement for ingress, egress, and utilities, which was subsequently recorded in King County. The 2007 easement declares:

> FOR A VALUABLE CONSIDERATION, . . . the Grantor(s) . . . hereby grant and convey a(an) [exclusive/non-exclusive] easement (attached and incorporated as Exhibit "A") to Grantee(s), its successors in interest and assigns, for the purpose of conveying an INGRESS / EGRESS & UTILITIES Easement.

(Emphasis added.) (First and second alterations in original.) In other words, although the 2007 easement was printed on a form permitting the parties to select whether the easement was exclusive or nonexclusive, neither option was selected. Under the easement, the Lam Property is the dominant estate, and the Bravo Property is the servient estate. The easement cites to exhibit B as the "legal description," but exhibit B does not indicate whether the easement is exclusive or nonexclusive. However, attached to the 2007 easement but not cited in the easement itself, is an attachment designated as exhibit C, which states that the easement is "an *exclusive* easement for ingress, egress, and utilities over, under, and across the west 10.00 feet of the . . . land." (Emphasis added.)

In a later declaration, the drafter of the 2007 easement, Tracy Timm, explained that he "drafted the exclusive easement for ingress, egress, and utilities," which "was intended to be exclusive." But Timm explained, "[M]y understanding [is] that the owner is not denied the use of his land just because it is encumbered by an easement." Additionally, when deposed, Nate and Na testified that during their 12-year residence at the Bravo Property, Viengkham consistently traversed the easement with his vehicle, parking on the west side of the property, near the easement. Nate further declared that no one used the easement to access the Lam Property between 2006 and 2014.

In October 2017, Lillian Lam—representing herself and Tible—filed suit against the Bravos and their tenant, Chihuahua, in King County Superior Court, alleging

3

(1) obstruction of easement, (2) nuisance, (3) disgorgement of profit, (4) damages, and (5) preliminary and permanent injunction. The Lams claimed that the Bravos violated the exclusive easement by renting the Bravo Property and allowing the property's tenants to block and use the Lams' easement. The Lams further contended that the easement excluded the Bravos and their tenants from its use. The Lams asserted that the Bravos' violations came at the expense of their quiet enjoyment and that they were entitled to receive a part of the Bravos' rental income. The Bravos counterclaimed that the Lams have continuously trespassed onto portions of their property, "using at least seven extra feet of [the Bravo Property] by driving their cars daily across the northern portion."

At the time the suit commenced, Chihuahua rented the upper apartment of the Bravo Property. Citing problems with the Lams, Chihuahua declined to renew her lease. Thereafter, Genaro Gonzalez and Gerardo Pena moved into the vacated apartment. Following an incident where Tible allegedly harassed Gonzalez, the Bravos informed the Lams, through counsel, that they would be installing a fence along the common property line. The Bravos sought and received a permit to build the fence.

The Lams sought a TRO under RCW 7.40.050 to stop the construction of the fence. The Lams requested, among other things, that the court require that the Bravos remove all fences and parked vehicles from the easement and enjoin the Bravos from "being within 100 feet [of] the [easement] unless they are removing obstructions from the express easement, prescriptive easement/easement by necessity, or Defendants' property that is being adversely possessed." The Lams claimed that they have "clear legal right to access their property," including "adverse possession rights to the full width

4

of the [easement], as used for decades." (Capitalization omitted.) The Lams contended that they provided the Bravos with notice of the hearing on the TRO. However, the trial court disagreed and denied the TRO motion for lack of notice under CR 65(b).[1] In March 2018, the Bravos constructed the fence.

On April 30, 2018, the Bravos moved for partial summary judgment.[2] In support of their opposition to the motion, the Lams submitted the declarations of Nate, Viengkham, and Na Phonbandit (collectively the Phonbandits). The Lams prepared the declarations, which Nate and Na later testified to signing without reading. The Bravos believed the declarations were conclusory and contrary to established facts and subpoenaed the Phonbandits for deposition testimony. The Lams and the Phonbandits did not appear for the depositions. The Lams allegedly instructed the Phonbandits to ignore Bravos' counsel's request for depositions. As a result, the Bravos filed a motion for contempt and only then did Nate and Na appear.

Nate's deposition testimony contracted all three declarations by the Phonbandits. Specifically, Nate's declaration stated that neither his brother nor other residents of the Bravo Property ever used the easement and that Tran and Arnaud, the previous owners of the Lam Property, consistently drove over a 13-foot-wide area. But at his deposition, Nate testified that his brother constantly used the easement and parked on the west side of the Bravo Property; he further testified that no one accessed the Lam Property from 2006 to 2014. Additionally, although Na's declaration was in English, the record contains evidence that she reads minimal English. Following the depositions, the Lams

---

[1] The court's order does not provide its reasons for finding that the Lams failed to provide notice.

[2] At this time, Daniel Frohlich filed a notice of appearance for the Lams.

withdrew the declarations.

After obtaining the Phonbandits' depositions, the Bravos renewed their motion for partial summary judgment. The Lams did not submit an opposition. At the beginning of the hearing on the motion, the Lams moved "to voluntarily dismiss the adverse possession claim." The Lams requested dismissal without prejudice, and the Bravos refused to stipulate unless dismissal was *with* prejudice. The Lams refused to agree to dismissal with prejudice, so the court proceeded with arguments on the merits. The Lams later reasserted that they were moving for voluntary nonsuit under CR 41. The court responded, "Right. But that's only on condition that it is without prejudice." The court moved on, and in its order for summary judgment, it concluded that the Lams' motion "wasn't presented in proper format with adequate notice to the opposing party."

During the hearing on the motion for summary judgment, the Bravos objected to the declaration of Timm, contending that the declaration was hearsay. The Bravos asked the court to strike the declaration and pointed the court to a footnote in their motion which contained their request. The court concluded that it would not strike the declaration because the Bravos did not complete the hearsay analysis outside of the footnote, but it would give it "the appropriate amount of weight."

Following the hearing, the trial court granted the Bravos' motion for summary judgment. The trial court dismissed the Lams' adverse possession and prescriptive easement claims with prejudice, quieted title in favor of the Bravos, and concluded that the 2007 easement was nonexclusive.

Subsequently, on the Bravos' motion, which was accompanied by Brian Muchinsky's declaration, the trial court awarded attorney fees and costs in the amount

of $46,507.53. The court further granted the Bravos' motions for sanctions under CR 11. The trial court found that the Lams acted in bad faith by (1) "[d]raft[ing] and fil[ing] false declarations for third parties," (2) "[o]bstruct[ing] the Bravos' ability to obtain discovery by directing witnesses to ignore any attempts by Bravos' counsel to obtain information," (3) making "false statements in their own declarations," (4) "[a]ssert[ing] claims that had no basis in fact or law, and (5) attempting "to intimidate the Bravos' tenants." The court sanctioned the Lams "in the amount of $5,000 . . . to deter and punish the Plaintiffs, Lam and Tible, from engaging in vexatious and frivolous legal practice in the future." The Lams appeal.

## ANALYSIS

The Lams contend that the trial court erred in granting the Bravos' partial motion for summary judgment with regard to the claims of adverse possession and the easement's exclusivity. We disagree.

We review summary judgment orders de novo, viewing all evidence and reasonable inferences in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Under CR 56(c), "summary judgment is appropriate where there is 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012) (alteration in original). "Summary judgment is proper on a factual issue only if reasonable minds could reach but one conclusion on it." Bohn v. Cody, 119 Wn.2d 357, 363, 832 P.2d 71 (1992). Once the moving party shows there are no genuine issues of material fact,

> [t]he nonmoving party *may not rely on speculation, argumentative assertions, "or in having its affidavits considered at face value; for after the*

moving party submits adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists."

Becker v. Wash. State Univ., 165 Wn. App. 235, 245-46, 266 P.3d 893 (2011) (emphasis added) (quoting Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986)).

*Adverse Possession Claim*

The Lams make two contentions with regard to the adverse possession claim: (1) that they never asserted an adverse possession claim and (2) that the trial court erred in refusing to grant their oral motion for voluntary nonsuit as to that claim. We disagree with both contentions.

As to the first contention, the Lams assert that because CR 56(b) allows a party to seek summary judgment when "a claim, counterclaim, or cross claim is asserted" and because they did not bring an adverse possession claim within their complaint, the Bravos could not seek summary judgment on the issue. While the Lams did not bring an adverse possession claim within their complaint and it is unclear from the record what *exactly* they claimed adverse possession rights to, their motion for a TRO claims that the Bravos' construction of a fence would enclose "property that is being adversely possessed, *as described in the Complaint*." (Emphasis added.) The TRO motion also claimed that the Lams have "adverse possession rights to the full width of the driveway, as used for decades." And Lillian Lam's declaration in support of the TRO motion stated that the prior owners of the Lam Property "continuously used an additional 10 feet of land on Bravo and Zhang's property for ingress and egress." The Lams also stated, as an "affirmative defense[ ]," that adverse possession barred the Bravos' counterclaims.

8

Finally, in their opposition to the Bravos' motion for summary judgment, the Lams asserted and presented extensive argument that "the facts establish adverse possession." (Capitalization omitted.) Specifically, the Lams claimed that the prior owners of the Lam Property "continuously and uninterruptedly drove over a 13-foot wide area on the western side of the Bravo Property." Indeed, within the opposition and the TRO motion, the Lams argued that they satisfied all elements of adverse possession.

Furthermore, it would be inequitable to allow the Lams to actively litigate a claim, provide false declarations in support of a claim, and then—when they realize the claim is meritless and they must pay attorney fees—allow them to contend that they never brought the claim. For these reasons, we conclude that although the Lams did not expressly state an adverse possession claim in their complaint, they nonetheless "asserted" such a claim for purposes of CR 56(6).

As to the second contention, the Lams argue that CR 41 required the trial court to grant their motion for a voluntary nonsuit. Under CR 41, the court "shall" dismiss any action "[u]pon motion of the plaintiff at any time before plaintiff rests at the conclusion of plaintiff's opening case." CR 41(a). "A plaintiff's right to a voluntary nonsuit must be measured by the posture of the case at the precise time the motion is made because the right to dismissal, if any, becomes fixed at that point." Calvert v. Berg, 177 Wn. App. 466, 472, 312 P.3d 683 (2013). When the plaintiff's motion is made in response to a summary judgment motion, "[the] plaintiff retains the right to a voluntary nonsuit until the motion for summary judgment has been 'submitted to the court for decision.'" Gutierrez v. Icicle Seafoods, Inc., 198 Wn. App. 549, 553, 394 P.3d 413 (2017) (quoting Paulson v. Wahl, 10 Wn. App. 53, 57, 516 P.2d 514 (1973)). A trial court has discretion to grant

9

the plaintiff's motion for voluntary nonsuit with prejudice. Escude v. King County Pub. Hosp. Dist. No. 2, 117 Wn. App. 183, 187, 69 P.3d 895 (2003). Dismissal with prejudice under CR 41(a)(4) should be limited to the "circumstances where dismissal without prejudice would be pointless." Escude, 117 Wn. App. at 187. We review a trial court's decision to deny a motion to dismiss under CR 41 for abuse of discretion. Escude, 117 Wn. App. at 190.

Escude is instructive. There, we consolidated three cases to review whether the trial court properly exercised its discretion when it dismissed certain claims with prejudice. Escude, 117 Wn. App. at 187. In the first consolidated case, the plaintiffs conceded that the dismissed claims lacked merit. Escude, 117 Wn. App. at 187. In the other two cases, the plaintiffs sought dismissal without prejudice under CR 41(a)(1)(B), but the defendants opposed dismissal without prejudice because the applicable statutes of limitation had run. Escude, 117 Wn. App. at 189. The trial courts granted dismissal with prejudice in each case. Escude, 117 Wn. App. at 189. We concluded that under CR 41(a)(4), a trial court has discretion to dismiss with prejudice those claims that an opposing party concedes lack merit or those claims that are outside of the applicable statutes of limitation. Escude, 117 Wn. App. at 192. We therefore affirmed the trial courts' orders of dismissal with prejudice. Escude, 117 Wn. App. at 192.

Here, similar to the plaintiffs in Escude, the Lams concede that they cannot satisfy the statutory requirements for an adverse possession claim. Escude, 117 Wn. App. at 192. Thus, dismissal without prejudice would be futile. This is particularly true considering that a fence now blocks the Lams' ability to access any part of the Bravos' property beyond the 10-foot easement. Therefore, we conclude that under CR 41(a)(4),

10

the trial court had authority to dismiss the adverse possession claim with prejudice.

On the basis of its authority to dismiss with prejudice, the trial court properly presented the Lams with an option: consent to dismissal with prejudice or proceed with the summary judgment hearing. The Lams chose to proceed. In short, the trial court properly conditioned consideration of the Lams' motion on its being a motion with prejudice. We conclude that when the Lams did not agree to that condition, they effectively withdrew their motion.[3] Accordingly, we next address whether the court properly granted summary judgment on the merits of the adverse possession claim.

For a court to award a party adverse possession rights to a property, the party's use must have been open and notorious, adverse, made under a claim of right in good faith, and for the statutory time frame. Kunkel v. Fisher, 106 Wn. App. 599, 602, 23 P.3d 1128 (2001). Under RCW 4.16.020, the adverse use must have existed for a minimum of 10 years. "[T]he party claiming to have adversely possessed the property has the burden of establishing the existence of each element." ITT Rayonier, Inc. v. Bell, 112 Wn.2d 754, 757, 774 P.2d 6 (1989).

Here, the Lams' adverse possession claim is meritless because the Lams admitted they could not satisfy the statutory period "without the declarations of Na and Nate, the declarations that we pulled back." In short, the Lams failed to establish an essential element of their adverse possession claim, and therefore, they did not establish that there was a genuine issue of material fact. Thus, we conclude that the

---

[3] The Bravos assert that CR 41 permits only the dismissal of an entire case and not just a single claim, and that the adverse possession claim could only be dismissed through a motion for amendment to the pleadings under CR 15. Because we conclude that the Lams withdrew their CR 41 motion upon the trial court's assertion of its right to grant the motion with prejudice, we do not address the Bravos' contention.

11

trial court properly granted summary judgment on the issue of adverse possession.

*Quiet Title Claim*

The Lams next contend that the trial court erred in quieting title to the Bravos Property "when no such relief was available or requested by the [Bravos] in [their] motion for summary judgment." We disagree.

"A trial court sitting in equity has broad discretionary power to fashion equitable remedies." Carbon v. Spokane Closing & Escrow, Inc., 135 Wn. App. 870, 878, 147 P.3d 605 (2006). And "[w]e review the authority of a trial court to fashion equitable remedies under the abuse of discretion standard." In re Foreclosure of Liens, 123 Wn.2d 197, 204, 867 P.2d 605 (1994).

Here, the Bravos did not request quiet title as the remedy for the summary judgment motion on adverse possession and did not present it as a counterclaim. Nonetheless, quiet title is an appropriate remedy for adverse possession claims. An adverse possession claim clouds the title to the at-issue property, and the remedy of quiet title resolves those competing ownership claims. Thus, quiet title is often sought in response to adverse possession claims. E.g., Maier v. Giske, 154 Wn. App. 6, 23 P.3d 1265 (2010). Indeed, the doctrine of adverse possession's "most important[ ]" purpose is to quiet title. Chaplin v. Sanders, 100 Wn.2d 853, 859-60, 676 P.2d 431 (1984). For these reasons, we conclude that the trial court acted within its discretion to grant quiet title as an equitable remedy. This is particularly true here, where the Lams have proven to be vexatious litigants and damages would be an inadequate remedy to prevent future meritless claims. See Carpenter v. Folkerts, 29 Wn. App. 73, 76, 627 P.2d 559 (1981) (concluding that where the remedy at law was inadequate, an equitable

12

remedy was appropriately imposed by the trial court).

The Lams disagree. The Lams claim that because there is no specification as to which property is being quieted and the trial court is not allowed to provide a remedy that was not explicitly requested, the trial court erred. First, the Lams cite no case law for the proposition that a specification must be made as to the property for which title has been quieted. The court quiets title to the property which is at issue in the dispute. Here, that includes the alleged adversely possessed property and the easement. The Lams cite White v. Kent Medical Center Inc. PS for the proposition that a court "will not consider issues raised for the first time in a reply brief." 61 Wn. App. 163, 168, 810 P.2d 4 (1991). White is not analogous. There, the party moving for summary judgment "did not seek summary judgment on or otherwise put into issue the question of proximate cause." White, 61 Wn. App. at 169. We "h[e]ld that it was error for the court to consider the proximate cause issue . . . and to rely on that issue as a basis for granting summary judgment." White, 61 Wn. App. at 169. Here, the Bravos did not raise quiet title for the first time in a reply brief, and the trial court did not rely on the remedy of quiet title in granting summary judgment. Rather, the court granted the motion for summary judgment on the adverse possession claim and chose an appropriate remedy. Thus, White does not control.

*Exclusivity of the Easement*

The Lams claim that the trial court erred in granting the Bravos' motion for summary judgment because a genuine issue of material fact exists as to whether the easement excludes the Bravos from its use. We disagree.

"'An easement is a property right separate from ownership that allows the use of another's land without compensation.'" Hanna v. Margitan, 193 Wn. App. 596, 606, 373 P.3d 300 (2016) (quoting M.K.K.I., Inc. v. Krueger, 135 Wn. App. 647, 654, 145 P.3d 411 (2006)). "If the plain language of the instrument is unambiguous, we will not consider extrinsic evidence." Rainier View Court Homeowners Ass'n v. Zenker, 157 Wn. App. 710, 720, 238 P.3d 1217 (2010). To this end, "the mere inclusion of the phase 'for the exclusive use' in the conveying instrument d[oes] not unambiguously provide" an easement to the dominant tract at the exclusion of the servient track's use. Johnson v. Lake Cushman Maint. Co., 5 Wn. App. 2d 765, 784, 425 P.3d 560 (2018). If a document is ambiguous, the court can consider extrinsic evidence, including the original parties' intent, determined from the easement document as a whole, Sunnyside Valley Irrig. Dist. v. Dickie, 149 Wn.2d 873, 880, 73 P.3d 369 (2003), "circumstances of the property when the easement was conveyed, and the practical interpretation given the parties' prior conduct." Johnson, 5 Wn. App. 2d at 785.

Washington case law on exclusive easements is extremely limited. Johnson, a Division Two case, is the only published Washington case discussing whether the term "exclusive" creates ambiguity in a document conveying an easement. In Johnson, property owner plaintiffs granted an easement to the defendant for a park and a road. Johnson, 5 Wn. App. 2d at 770. The easement granted an "'easement for the exclusive use of the [grantee-defendant].'" Johnson, 5 Wn. App. 2d at 770. The plaintiffs brought an action to quiet title, and the defendant counterclaimed to quiet title to the easement, which the defendant claimed included the right to exclude the plaintiffs from using the easement in any way. Johnson, 5 Wn. App. 2d at 768, 773. The defendant filed a

14

motion for summary judgment; in response, the plaintiffs filed declarations stating that portions of the easement had only ever been used as a driveway for the plaintiffs' access to their estates. Johnson, 5 Wn. App. 2d at 774-75. The trial court granted the defendant's summary judgment in part and quieted title to the exclusive easement in favor of the defendant. Johnson, 5 Wn. App. 2d at 769.

Division Two concluded that the trial court erred because the defendant "failed to show that there was no genuine issue of material fact that their easement was intended to be an exclusive easement." Johnson, 5 Wn. App. 2d at 769. In particular, the defendant had relied "solely . . . on the language in the easement document," and despite the easement's proclamation of exclusivity, the instrument was ambiguous. Johnson, 5 Wn. App. 2d at 783, 785. The court held that the term "exclusive" in an easement could be interpreted as (1) a grant to the exclusion of all others *except the grantor*, (2) an easement excluding all others, *including the grantor*, or (3) grant of an easement in fee simple. Johnson, 5 Wn. App. 2d at 785. Thus, Division Two looked at the extrinsic evidence provided by the plaintiffs and concluded that there was a genuine issue of material fact. Johnson, 5 Wn. App. 2d at 785.

Here, like the easement document in Johnson, we conclude that the easement is ambiguous for multiple reasons. First, as described above, the parties to the 2007 easement failed to select either exclusive or nonexclusive from the preprinted clause within the easement. Second, exhibit C, which contains the "exclusive" language and is titled "Legal Description," is not cited by the easement. Instead, exhibit B is cited as the "legal description" within the easement document. And exhibit B does not comment on exclusivity. Finally, as in Johnson, "exclusive" is ambiguous, and the court must

15

therefore look to extrinsic evidence to interpret the 2007 easement.

With regard to extrinsic evidence, the Bravos first point to the depositions of Nate and Na. Nate testified that the 2007 easement's grantor, Viengkham, constantly drove and parked on the easement while he resided at the Bravos Property from 2004 to 2016. Both at and after the time of conveyance of the 2007 easement, the Bravo Property continued to use the property encumbered by the easement. Thus, the evidence provided shows that the only reasonable interpretation, given the grantor's conduct and the circumstances at the time of conveyance, is that the easement is not exclusive, i.e, does not prohibit use for the benefit of the Bravo Property. See Hayward v. Mason, 54 Wash. 649, 650-52, 104 P. 139 (1909) (holding that an ambiguous right of way for the use of a ditch was not exclusive where the grantor used the ditch prior to and following the deed's conveyance, and "nothing in the deed, or in the circumstances existing at the time [the right of way was granted] . . . indicate that the right of way granted was an exclusive one").

Moreover, unlike in Johnson, the Lams have failed to present any extrinsic evidence that raises a genuine issue of material fact as to whether the easement was intended to exclude use for the benefit of the servient estate. The Lams point to two additional pieces of evidence. First, the Lams cite the declaration of Timm. But contrary to the Lams' contentions, the declaration provides nothing in the way of clarity. Timm merely proclaimed that the easement was meant to be "exclusive." As it is within an easement document itself, the term "exclusive" in Timm's declaration is ambiguous. And even when viewed in the light most favorable to the Lams, the declaration is detrimental to their claim because Timm clarified that he did not understand "exclusion"

16

to mean to the exclusion of the Bravo Property owner. According to Timm, the Phonbandits were "to continue to enjoy the use of their land without impeding access in any way to [the Lam Property], and not for the use of any other properties around these parcels that may also need access now or in the future."

Second, the Lams assert that an easement granted for ingress and egress in 1983—when compared to the 2007 easement—provides "[t]he reasonable inference . . . that the [1983] easement was being modified to be exclusive." The Lams cite no authority for the proposition that a court should rely on a prior easement to interpret a subsequent one. Additionally, the Lams failed to provide any evidence of the 1983 easement's parties' prior use or intent. Thus, the 1983 easement could have been exclusive before the 2007 easement. And the Lams provide no evidence that either prior property owner intended to modify the 1983 easement when documenting the 2007 easement. In short, the Lams' contention that the 2007 easement was intended as a modification is no more than speculation. This is insufficient to show a genuine issue of material fact. See Becker, 165 Wn. App. at 245-46 ("The nonmoving party may not rely on speculation, argumentative assertions, 'or in having its affidavits considered at face value.'" (quoting Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986))).

The Lams make five additional claims revolving around the inclusion and consideration of exhibit C. The claims can be summarized and reduced to the following three assertions: (1) because the court did not consider exhibit C, the court's decision "did not construe the easement as a whole, [and] . . . did [not] give meaning to each part of the easement;" (2) exhibit C created a genuine issue of material fact; and

17

(3) summary judgment "improperly resolve[d] the factual issue of the intentions of the original parties when the easement was conveyed." (Emphasis omitted.) As discussed, exclusive is an ambiguous term, and the easement, as a whole, including Exhibit C, was ambiguous. Thus, the Lams' additional assertions fail.

Finally, the Lams rely on Sunnyside Valley Irrigation District for the proposition that the trial court failed to consider the easement as a whole. There, the plaintiff, the dominant tract holder to an easement allowing for the maintenance of an irrigation ditch, brought suit seeking declaratory relief that the easement on the defendant's land could be expanded to provide adequate space for maintenance. Sunnyside Valley Irrig. Dist., 149 Wn.2d at 876. The trial court agreed and ordered the removal of trees and other property within a particular area to allow for the necessary expansion. Sunnyside Valley Irrig. Dist., 149 Wn.2d at 879. Our Supreme Court affirmed because the document *clearly* allowed for enlargement of the ditch's laterals and, thus, enlargement of the area to be used for maintenance thereof as set forth in the easement document. Sunnyside Valley Irrig. Dist., 149 Wn.2d at 884. Despite the Lams' contentions, it is clear from the 2007 easement as a whole that the intent is *unclear* and must be determined looking at the circumstances surrounding conveyance and the prior use of the easement by the grantor. Thus, Sunnyside is unpersuasive.

<u>Attorney Fees and Sanctions</u>

*Declaration of Brian Muchinsky*

As an initial matter, the Lams claim that the trial court erred by failing to strike the declaration of Brian Muchinsky. We disagree.

Muchinsky represented Powell Construction LLC, which the Lams sued in early

2017. He also represented the Bravos' tenants against prior antiharassment petitions brought by the Lams. Muchinsky admitted his biases on these bases but filed a declaration in support of the Bravos' motion for attorney fees and sanctions. The Lams also point out that in their lawsuit against Powell Construction, the court reduced Muchinsky's request for attorney fees by 41 percent. But the Lams cite no case law to support their argument that the fee reduction or Muchinsky's admitted bias required the trial court to strike the declaration. "Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Because the Lams cite no authority in support of their argument, we are not persuaded.

*Attorney Fees and Costs Below*

The Lams contend that the trial court erred by granting attorney fees and costs to the Bravos. We disagree.

"When reviewing an award of attorney fees, the relevant inquiry is first, whether the prevailing party is entitled to attorney fees." Unifund CCR Partners v. Sunde, 163 Wn. App. 473, 483-84, 260 P.3d 915 (2011). An award of attorney fees must be based in "contract, statute, or recognized ground of equity." Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014). We review de novo whether the trial court had a legal basis for awarding attorney fees. Durland, 182 Wn. App. at 76. The second inquiry is "whether the fee award is reasonable." Unifund CCR Partners, 163 Wn. App. at 483-84. But when attorney fees are authorized, "in order to reverse that award, the

opponent *must show* that the trial court manifestly abused its discretion." Unifund CCR Partners, 163 Wn. App. at 484 (emphasis added).

Under RCW 7.28.083(3),

> [t]he prevailing party in an action asserting title to real property by adverse possession may request the court to award costs and reasonable attorneys' fees. The court may award all or a portion of costs and reasonable attorneys' fees to the prevailing party if, after considering all the facts, the court determines such an award is equitable and just.

When only certain claims support fee recovery under a statute, "the attorney fees award must properly reflect a segregation of the time spent on issues for which attorney fees are authorized from time spent on other issues." Hume v. Am. Disposal Co., 124 Wn.2d 656, 672, 880 P.2d 988 (1994). The party seeking attorney fees has the burden of segregating unrelated expenses. Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.), 119 Wn. App. 665, 690, 82 P.3d 1199 (2004).

Here, as discussed, the Lams did assert an adverse possession claim, and the Bravos prevailed on that claim. Therefore, under RCW 7.28.083(3), the trial court had statutory authority to award fees and costs. As such, the issue before us is whether the amount was appropriate. In its order granting fees, the court explained:

> The court has carefully reviewed the Declaration of counsel (and billing entries) as well as the Declaration of Mr. Muchinsky and finds the attorney fee award of $46,507.53 to be reasonable and necessarily incurred by the Defendants. The court reduced the amount (from $53,507.53) to account for segregating work done on the adverse possession claim from the easement claim.

As the court noted, it was required to and did exclude fees from time spent on the easement exclusivity claim. Although a court must make a record of fee segregation,[4] a

---

[4] See Travis v. Wash. Horse Breeders Ass'n, 111 Wn.2d 396, 411, 759 P.2d 418 (1988).

court need not identify each time entry it segregates out. Instead, the court must review the record and the parties' arguments in order to calculate by how much the fees must be reduced and state that amount. The court did so here, concluding that the award should be reduced by $7,000 after "careful[ ] review." And the Lams have failed to show exactly how the calculation is inaccurate or arbitrary or which fees the trial court improperly included. Instead, the Lams contest the same aspects of the award that they contested below and claim that the award's reduction amount is "grossly inadequate." But they have not pointed to sufficient evidence that the trial court failed to exclude the contested fees.

The Lams state that the attorneys' work on initial pleadings, discovery, mediation, strategizing, and trespass do not mention or do not relate to the adverse possession claim. The Lams contend that the work on initial pleadings, discovery, and mediation do not mention adverse possession and total $9,146.50. Although it does not mention adverse possession, the work necessarily involves some response to the adverse possession claim that the Lams brought in the TRO. Furthermore, some claims will be "inseparable" despite involving the nonrecoverable easement work. See, e.g., Blair v. Wash. State Univ., 108 Wn.2d 558, 572, 740 P.2d 1379 (1987) (affirming the trial court's determination that the "attorney fees incurred for the successful and unsuccessful claims were inseparable" and the court's award of all attorney fees). As such, the Lams' mere conclusions that the pleadings, discovery, and mediation do not involve adverse possession work are insufficient to explain how the fees are unrelated to the adverse possession claim and therefore are improper. Additionally, the Lams contend that the fees for opposing the TRO and for the motion to compel the

21

Phonbandits to appear at their depositions do not relate to adverse possession, but the TRO explicitly brings an adverse possession claim and the Phonbandits' declarations were used to support the Lams' claim. In short, the Lams' contentions are unpersuasive because they failed to show that the included fees were not related to the adverse possession claim and failed to show how the trial court manifestly abused its discretion.

The Lams, however, contend that the court erred in awarding certain costs to the Bravos because the costs are not recoverable under RCW 4.84.010, and that the court erred by awarding paralegal fees.[5] First, because the trial court properly awarded fees under RCW 7.28.083, the limitations on costs under RCW 4.84.010 do not apply. Second, the Lams did not provide evidence that any improper clerical paralegal fees were included by the trial court in the award. Thus, we are not persuaded.

*CR 11 Sanctions*

The Lams also contend that the trial court erred in imposing sanctions under CR 11. We disagree.

Under CR 11(a), "[e]very pleading, motion, and legal memorandum of a party . . . shall be dated and signed" by the party or the party's attorney. The signature certifies that the party or its attorney

> has read the pleading, motion, or legal memorandum, and that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) *it is well grounded in fact;*
> (2) *it is warranted by existing law or a good faith argument* for the extension, modification, or reversal of existing law or the establishment of new law;

---

[5] To the extent that the Lams argue that paralegal fees are never recoverable, they are incorrect. See Absher Constr. Co. v. Kent Sch. Dist. No. 415, 79 Wn. App. 841, 845, 917 P.2d 1086 (1995) (providing six factors the court considers when it determines whether a nonlawyer's work may be paid in an award for attorney fees).

(3) it is not interposed for *any improper purpose, such as to harass* or to cause unnecessary delay or needless increase in the cost of litigation; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

CR 11(a) (emphasis added). When a party violates this rule, the court—on a motion or its own initiative—may impose an appropriate sanction, "which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing . . . , including a reasonable attorney fee." CR 11(a)(4). The legislature enacted CR 11 "to deter baseless filings and to curb abuses of the judicial system." Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 219, 829 P.2d 1099 (1992) (emphasis omitted). We review CR 11 sanctions for an abuse of discretion. King County Water Dist. No. 90 v. City of Renton, 88 Wn. App. 214, 230, 944 P.2d 1067 (1997).

In In re Recall of Lindquist, the petitioners knowingly omitted and misquoted material portions of documentary evidence to justify a case that was intended to harass the respondent, refused to comply with subpoenas, and knew that a previous recall petition for the same issue had been dismissed. 172 Wn.2d 120, 136-38, 258 P.3d 9 (2011). Our Supreme Court determined that "[s]ufficient evidence show[ed] that petitioners brought the recall petition with charges they knew to be frivolous, they did so for the purpose of harassment, and they acted in bad faith throughout the recall process." In re Recall of Lindquist, 172 Wn.2d at 136. The court therefore upheld a CR 11 sanction of attorney fees against the petitioners. In re Recall of Lindquist, 172 Wn.2d at 137-39.

Similarly, here, the Bravos pointed to sufficient sanctionable conduct. First, the

Lams knowingly filed three false declarations. The Lams failed to investigate the truth of the declarations, as evidenced by the Lams' later withdrawal thereof and the wholly inconsistent testimony of the Phonbandits. Additionally, there was no basis in law for the Lams' claim that they were entitled to receive rental income from the Bravos due to their tenants' use of the easement, and there was no basis in fact for the Lams' assertion of adverse possession rights. In short, sufficient evidence was presented to conclude that the Lams have abused the judicial system by filing lawsuits not well grounded in fact or based on law. Thus, the trial court did not abuse its discretion in imposing sanctions.

As a final matter, the Lams contend that they did not receive sufficient notice of the potential for sanctions and that the lack of notice violated their due process rights. King County Water Dist. No. 90 is instructive. There, following trial, the district moved for sanctions in a reply to the city's objection to a cost bill. King County Water Dist. No. 90, 88 Wn. App. at 231. The trial court did not set a time for a hearing on the motion and signed the order only two days after the city was served the reply by mail. King County Water Dist. No. 90, 88 Wn. App. at 231. We concluded that the city, which failed to reply to the motion, "was given sufficient notice and opportunity to be heard on the issue of sanctions." King County Water Dist. No. 90, 88 Wn. App. at 231. Here, the Lams were able to and did respond to the Bravos' motion for sanctions. Thus, we conclude that the Lams received sufficient notice.

### Attorney Fees on Appeal

The Bravos contend they are entitled to attorney fees and costs on appeal pursuant to RAP 18.1 and RCW 7.28.083(3). "A party is entitled to attorney fees on

appeal if a contract, statute, or recognized ground of equity permits recovery of attorney fees at trial and the party is the substantially prevailing party." Hwang v. McMahill, 103 Wn. App. 945, 954, 15 P.3d 172 (2000). RCW 7.28.083(3) provides a statutory basis for the award of attorney fees to the prevailing party of an adverse possession claim on appeal. Workman v. Klinkenberg, 6 Wn. App. 2d 291, 308-09, 430 P.3d 716 (2018). Because the Bravos are the prevailing party on appeal, we award the Bravos their reasonable attorney fees and costs on appeal subject to their compliance with RAP 18.1(d).

For the foregoing reasons, we affirm.

Smith, J.

WE CONCUR:

Dwyer, J.

Appelwick, C.J.